# UNITED STATES DISTRICT COURT FOR THE
# SOUTHERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| KWT CUSTOM HOMES, L.L.C. § | CIVIL CASE NO. _____ |
| f/k/a KARON and WILLIS TURNER § | |
| d/b/a KWT CUSTOM HOMES § | |
| Plaintiff, § | |
| § | |
| § | |
| V. § | HONORABLE JUDGE_____ |
| § | |
| FIDELITY NATIONAL PROPERTY § | |
| AND CASUALTY INSURANCE § | |
| COMPANY § | |
| Defendant. § | MAGISTRATE JUDGE _____ |

## PLAINTIFF'S ORIGINAL COMPLAINT

MAY IT PLEASE THE COURT:

Through the undersigned attorney, now comes KWT CUSTOM HOMES, L.L.C. f/k/a KARON and WILLIS TURNER d/b/a KWT CUSTOM HOMES ("KWT") who, for the following reasons, bring the instant complaint against FIDELITY NATIONAL PROPERTY AND CASUALTY INSURANCE COMPANY and states as follows:

### NATURE OF THE ACTION

1. This is a civil complaint by KWT (hereinafter referred to as "Plaintiff") against its insurer, Fidelity National Property and Casualty Insurance Company (hereinafter referred to as "FIDELITY") to enforce its rights under a flood insurance policy issued by FIDELITY.

2. On September 13, 2008, Hurricane Ike caused flood damage and loss to Plaintiff's building in Crystal Beach, Texas. Plaintiff submitted a claim under its policy issued by FIDELITY but FIDELITY has refused to fully pay Plaintiff's claim.

## THE PARTIES

3. Plaintiff is a Texas Limited Liability Corporation with its principal office located at 1250 N. Crystal Beach Road, Crystal Beach, Teaxs.

4. FIDELITY is an insurance company incorporated under the laws of the State of New York with its principal place of business at 601 Riverside Avenue, Building 5, Jacksonville, Florida 32204. FIDELITY is engaged in the practice of insurance in the State of Texas. FIDELITY may be served with process by certified mail, return receipt requested through its agent for service in Texas, C T Corporation System, 350 North St. Paul Street, Dallas, Texas 75201. **Issuance of summons is requested at this time.**

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over the claims in this action as they arise pursuant to a claim under a Standard Flood Insurance Policy (hereinafter referred to as "SFIP"). Any claims under a SFIP are governed solely by federal law pursuant to Article IX of the SFIP.[1] Therefore, Plaintiffs assert that there is federal question jurisdiction pursuant to *28 U.S.C. § 1331* as this matter requires interpretation of, and the resolution of the case is dependent upon, interpretation and application of federal laws, rules and regulations including the SFIP, itself codified and found at 44 C.F.R. Pt. 61, App. A (1), and the Appropriations, Supremacy and Commerce Clauses of the U.S. Constitution. Furthermore, jurisdiction exists pursuant to the grant of "original exclusive" jurisdiction found in *42 U.S.C. § 4072* as it involves a breach of contract claim under a SFIP.

6. As more fully explained below, the action involves a contract to insure Plaintiffs' property located at 808 Eastview, Crystal Beach, Texas, 77650, against flood damage. The contract for flood insurance was made in Crystal Beach, Texas, was to be performed there,

---
[1] *See* 44 C.F.R. Pt. 61, App. A(1), Art. IX.

involves property located there, and all of the events or omissions giving rise to the claims asserted in this complaint arose there so that venue for this action lies in this court under Art. VII.R of 44 C.F.R. Pt. 61, App. A(1). The federal courts have exclusive jurisdiction over causes of action arising under the National Flood Insurance Program.[2] Consequently, Section VII, Subsection R of the SFIP issued by the Federal Emergency Management Association through its National Flood Insurance Program requires that venue be set in the United States District Court of the district in which the insured property was located at the time of loss.

## FACTS

7. FIDELITY issued Flood Insurance Policy no. 42770124731500 (hereinafter referred to as the "Fidelity Policy") to Plaintiff. The Fidelity Policy provided coverage for flood damage to Plaintiffs' single family property in Crystal Beach, Texas and was effective for the period of May 15, 2008 to May 15, 2009. The Fidelity Policy provided $250,000.00 dollars in coverage for Plaintiffs' dwelling with a deductible of $5,000.00 dollars.

8. The premium for the Fidelity Policy was $1,211.00 dollars.

9. Plaintiff timely paid the premium for the Fidelity Policy.

10. The Fidelity Policy insures a single family property located at 808 Eastview Dr., Crystal Beach, Texas 77650. Plaintiff is the named insured on the Fidelity Policy.

11. On September 13, 2008, while the Fidelity Policy was in full force and effect, Hurricane Ike caused flood damage to the insured property.

12. As a result of the flooding during Hurricane Ike, the insured property was severely damaged or destroyed. The flood damages are covered losses under the Fidelity Policy.

13. Plaintiffs reported the losses and damages to FIDELITY in a timely fashion and properly discharged the reporting obligations under the Fidelity Policy.

---

[2] *See* Art. VII.R of 44 C.F.R. Pt. 61, App. A(1).

14.     On December 19, 2008, an estimate of damages was completed by FIDELITY's adjuster, Edward Esteban. Mr. Esteban estimated the full cost of repair or replacement of the dwelling damage to be $10,249.92 dollars. After subtracting the deductible, Mr. Esteban represented to Plaintiff that it should receive $5,249.92 for the covered loss. Defendant did not pay Plaintiff $5,249.92. Instead, Defendant continued its investigation and hired U.S Forensics to determine the cause and extent of the reported damage under the claim.

15.     On October 28, 2008, Kevin Knowles from US Forensics inspected the home. Based on his observations, US Forensics reported significant soil scouring around and under the reinforced concrete slab. In fact, Mr. Knowles measured a 6 foot gap or void under the concrete slab. This opening is large enough for a grown man to crawl through from one side of the building to the other. He also noted multiple large cracks of varying lengths and widths observed not only near the piles but throughout the entire surface of the slab. This slab is a structural component of the home. The flood severely damaged the slab and pilings.

16.     Nevertheless, Defendant advised Plaintiff it would only pay to fill in or replace the dirt under the slab and to replace the concrete. There was no discussion of the tilted pilings or any other exterior or interior damage caused by the rotation and movement of the building, except for replacing the staircase. Interestingly, not one of the adjusters or engineers who initially inspected the home felt it was safe enough to enter and refused to do so. Plaintiff alleges Defendant's investigation was woefully inadequate.

17.     Dissatisfied with the Defendant's analysis, Plaintiff hired its own engineer to analyze the cause and extent of the structural damage. Plaintiff's expert recommended that the home be removed from its pilings, and an entirely new house be built on the site once new fill, slab and pilings are inserted and a new foundation system is created. Plaintiff shared this report with the Defendant

and advised Defendant of a number of overlooked items that were not addressed in their analysis, such as:

1. Pilings were out of plumb, rotated and have vertically settled due to flood waters.
2. Structural slab damaged and unstable.
3. Unstable soil.
4. The doors, joists and walls out of plumb.

18. Following receipt of this letter, Defendant sent US Forensics out yet again to inspect the property. During the second inspection, US Forensics admitted that 18 out of 25 pilings (72% of the pilings) supporting the home were either vertically or horizontally displaced by the flooding. The second set of recommendations from Defendant's engineer greatly expanded the original scope of repairs. For example, US Forensics recommended the "upper portion of the building be temporarily supported and re-leveled." Further, Defendant's engineers suggested "straightening" or racking the pilings and then re-setting the building on them.

19. Despite the extreme measures needed to repair the dwelling, there still was no discussion of exterior or interior damage to the home. It was not until June 8, 2009, that Scott Cameron from US Forensics inspected the property a third time for Fidelity. He noted uneven floors indicative of "differential movement of the building that resulted from the displacement of the support piles of the building by floodwaters." Instead of replacing cracked sheetrock, Mr. Cameron's repair plan was to fill in the cracks with joint compound and paint over them. There is little question that removing the home from the piers and reattaching it later will cause enormous stress on the cosmetic finishes of the home. Yet, this ensuing damage was not addressed in any US Forensics' report.

20. On October 5, 2009, Defendant informed Plaintiff it had finally concluded its investigation of the hurricane loss. Defendant estimated the covered damages to be $73,067.56 and on 12/29/09 issued payment for that amount (less the $5,000.00 deductible) once Plaintiff submitted a proof of loss. Plaintiff specifically objected to the amount listed in the proof of loss and reserved it rights to request further payments and/or damages[3].

21. On January 5, 2010, FIDELITY rejected Plaintiffs' request for additional payments for the structural damage to the building[4]. More specifically, Defendant relied upon and cited 2004 FEMA Bulletin W-04091 to deny coverage for the concrete slab. FEMA Bulletin W-04091 reads: "Slabs are covered <u>only if</u> they are part of the foundation. To be part of the foundation, a slab must be at least 6 inches thick containing rebar and tied into the posts, pilings, piers or other foundation walls required to support the building." The slab in the present case was at least 6 inches thick, contained rebar and was tied into the posts, pilings or piers or other foundation walls required to support the building.

22. Since Plaintiff initiated the claims process, Plaintiff has provided FIDELITY access to the insured property, has provided all requested and available information to FIDELITY that is available, has submitted a proof of loss, and has otherwise properly discharged the obligation to cooperate with FIDELITY in its investigation and adjustment of the flood damages sustained by Plaintiff.

23. Plaintiffs and FIDELITY have agreed on only some of the areas of the insured property that the flood from Hurricane Ike damaged. However, Plaintiffs and FIDELITY have not agreed on the value of loss to Plaintiffs' dwelling or coverage for the slab and the appropriate method of repairing same.

---

[3] *See* Plaintiffs' Exhibit A, November 4, 2009 letter from Plaintiff's attorney enclosing Plaintiff's Proof of Loss.
[4] *See* Plaintiffs' Exhibit B, Defendant's denial letter dated January 5, 2010.

24. Representatives of Plaintiff and FIDELITY have discussed the claim and attempted to reach a resolution. To date, however, FIDELITY has refused to pay the full value of the losses incurred by Plaintiff.

## COUNT I– BREACH OF CONTRACT

25. Plaintiff reasserts and incorporates by reference each of the allegations contained in the foregoing paragraphs.

26. Plaintiff and FIDELITY entered into a valid binding contract for flood insurance. FIDELITY agreed to pay Plaintiffs up to $250,000.00 dollars for the dwelling on Plaintiffs' property for damages caused by flooding. Plaintiff agreed to and did pay a premium in consideration for the Fidelity Policy.

27. Plaintiff has performed all conditions precedent under the Fidelity Policy, including submitting a signed and notarized revised proof of loss.[5]

28. FIDELITY breached its contract with Plaintiff when FIDELITY failed to properly adjust and pay Plaintiff for the full amount of flood damage to the insured dwelling (replacement cost value).

29. Plaintiff's breach of contract claim is expressly authorized by *42 U.S.C. § 4053* and/or *42 U.S.C. § 4072*.

30. Plaintiff is entitled to damages which will compensate for the dwelling flood loss at replacement cost value, as provided for by the Fidelity Policy, and for all incidental and consequential damages which Plaintiff has suffered.

---

[5] *See* Plaintiffs' Exhibit A.

PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that upon judgment hereof, Plaintiff recover against Defendant, FIDELITY NATIONAL PROPERTY AND CASUALTY INSURANCE COMPANY, sums for breach of contract, as Plaintiff is entitled to regain the benefit of its bargain, which is the amount of the claim. Plaintiff further requests the award of any other and further relief, either at law or in equity, to which Plaintiff may show itself to be justly entitled.

Dated: August 18, 2010

Respectfully submitted,

By /s/ *David C. Wenholz*
David C. Wenholz
Attorney in Charge
Federal ID no. 16460
Texas Bar no. 21176350

**THE WENHOLZ LAW FIRM**
2901 Bee Cave Rd.
Box H
Austin, TX 78746
(512) 478-2211 Telephone
(512) 478-3625 Facsimile
E-mail: dwenholz@wenholz.com

**COFFEY & BROWNE, L.L.P.**

Mr. Trey Browne
2390 Eastex Freeway
Suite 100
Beaumont, Texas 77703
(409) 892-5807 (fax)
(409) 892-5800
E-mail: tbrowne@coffeybrowne.com

Federal Bar no. 18565
Texas Bar No. 00790388

Local counsel

**COUNSEL FOR PLAINTIFF
KWT CUSTOM HOMES, L.L.C.
f/k/a KARON and WILLIS TURNER
d/b/a KWT CUSTOM HOMES**